**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **JEFF ARBEIT, SELENA KANSAL, STUART SWANSON, KEITH FLOWERS, SUSAN COLOWICK, and RYAN BAKER,** individually and on behalf of all persons similarly situated,<br><br>              **Plaintiffs,**<br><br>       **v.**<br><br>**CAPITAL ONE, N.A. and CAPITAL ONE FINANCIAL CORP.,**<br><br>              **Defendants.** | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Case No.:**   3:25cv821 |

Plaintiffs Jeff Arbeit, Selena Kansal, Stuart Swanson, Keith Flowers, Susan Colowick, and Ryan Baker (collectively, "Plaintiffs," each a "Plaintiff"), on behalf of themselves and similarly situated members of the below defined nationwide and state classes they respectively seek to represent (collectively, the "Class"), by and through their undersigned counsel bring this Class Action Complaint against Capital One, N.A. ("CONA") and Capital One Financial Corp. ("COFC," with CONA, "Capital One") for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violations of state consumer protection laws; (4) promissory estoppel; and (5) unjust enrichment. Each Plaintiff brings these allegations, upon personal knowledge as to each and his or her own acts, and as to all other matters upon information and belief based upon the investigation conducted by counsel.

## NATURE OF THE ACTION

1.      CONA is the wholly owned bank subsidiary of COFC, a bank holding company. Among other things, Both CONA and COFC control Capital One's web site.

2.      CONA offers credit cards, checking, savings, and loan products. Among the consumer products and savings accounts offered by CONA is its 360 Money Market account, in which each Plaintiff deposited funds. Since at least 2016. COFC and CONA have advertised the 360 Money Market account as offering "one of the nation's top savings rates,"[1] and as a "high-interest," "high-yield" account. Consumers were told to "expect more" and "get more" from their savings when invested in a 360 Money Market account, which would help them generate "savings growth for the long haul."[2] Capital One advertised the 360 Money Market account as a superior

---

[1] https://web.archive.org/web/20170601045514/https://www.capitalone.com/ (dated June 1, 2017) (last accessed Oct. 2, 2025).

[2] https://web.archive.org/web/20161012020417/https://www.capitalone.com/online-money-market-account (last modified on Oct. 12, 2016) (last accessed Sept. 15, 2025).

product to even its other savings accounts, earning the highest interest Capital One offered on its consumer savings products on balances of $10,000 or more.[3]

3.      The advertised "long haul" was short-lived. In September 2019, Capital One created its 360 Performance Savings account. Unlike the 360 Money Market accounts, the 360 Performance Savings accounts had no minimum balance requirement to earn its advertised interest rate. While 360 Money Market account customers, like Plaintiffs and Class members, believed that they were invested in Capital One's best savings product, and thus, with balances of $10,000 or more, expected that they were earning the highest available interest, this was not so. Shortly after Capital One introduced its 360 Performance Savings account, it started dropping interest rates for its 360 Money Market account and started increasing interest rates for its 360 Performance Savings account.

4.      By no later than September 18, 2019, Capital One had quietly dropped all references to the 360 Money Market accounts from its web site.

5.      At the beginning of September 2019, the 360 Money Market account annual percentage yield ("APY") was 2.0%,[4] but after launching 360 Performance Savings, Capital One dropped the 360 Money Market APY to 1.9%, matching the debut APY for its 360 Performance Savings.  And, then, despite Capital One's advertisements that told 360 Money Market account holders to expect that they would earn "high interest" and "high-yield" holding their funds in Capital One's best savings account, in a short period of time after Capital One's introduction of

---

[3] https://web.archive.org/web/20181231211309/https://www.capitalone.com/bank/savings-accounts/online-money-market-account/?360b_MM_WWW_MMBAU_HP_EXP5_CO_1 (dated Dec. 31, 2018) (last accessed Oct. 2, 2025).

[4] While the terms "APY" and "interest rate" similarly reflect interest earned, APY tends to be slightly higher than a given interest rate because APY accounts for compounded interest earned throughout the year.

the 360 Performance Savings, as the federal funds effective rate began to decline in early 2020, the interest Capital One offered on the Performance 360 Savings accounts eclipsed that offered for the 360 Money Market accounts—even for those with balances over $10,000.

6.    After the interest rate drops began to reverse in 2022, the difference between the rates earned on these two accounts expanded exponentially. Between April 2022 and December 2024, Capital One increased its 360 Performance Savings APY from 0.4% to 3.9%, while Capital One raised the APY for the 360 Money Market accounts with $10,000 or more from 0.3% to only 0.8%. During this period, interest rates for the 360 Performance Savings were consistently much higher than (and at times more than quadruple) Capital One's 360 Money Market interest rate.

7.    After 2022, the interest and yield earned by 360 Money Market account holders, lauded by Capital One itself for its nationally competitive interest rate, would never exceed—or even come close—to rates earned on funds deposited in 360 Performance Savings accounts. In fact, in January 2024, when federal funds rates began to peak, Capital One's 360 Money Market account interest rate was 0.797% while the 360 Performance Savings rate had ballooned to 4.266%—*a difference of over 500%.*

8.    While Capital One largely stopped its 360 Money Market account advertisements in September 2019, its deception about the interest earned in its money market accounts generally continues to this day. In January 2021, Capital One published a "Banking Basics" guide to money market accounts on its web site. That guide touted "the higher savings return benefits of a money market account," as compared to a traditional savings account, and advertised that both money market accounts and high-yield savings accounts "offer[ed] comparable interest rates."[5] These

---

[5] https://web.archive.org/web/20210129022311/https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-money-market-account/(last modified Aug. 7, 2018) (last accessed Oct. 2, 2025).

statements remain on Capital One's web site today, continuing to misrepresent to 360 Money Market account holders that they are earning rates superior or, at a minimum, comparable to, a high-yield savings account.[6]

9.      Plaintiffs and Class members opened and maintained 360 Money Market accounts based on Capital One's promises that they would receive "one of the nation's best savings rates" and in particular, "one of the nation's best savings rates for accounts with balances of $10,000 or more."[7] Instead of providing Plaintiffs and Class members with the product they advertised, Capital One duped its high-balance customers into thinking they had a superior and unique savings opportunity by investing in the 360 Money Market accounts, when in fact the 360 Performance Savings was far superior.

10.      Not only was Capital One's 360 Money Market account product substantially worse than its 360 Performance Savings account product, but from at least 2022 to the present, the interest rate and yield it offered, advertised as "one of the nation's best," was significantly inferior to money market accounts offered by Capital One's competitor banks. In September 2023, for example, according to the finance web site NerdWallet, the seven best APYs offered on money market accounts ranged from 4.2% to 5.25%[8]—a far cry from the 0.8% the 360 Money Market accounts were yielding at the time.

---

[6] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-money-market-account/ (emphasis added) (last accessed Oct. 2, 2025).

[7] https://web.archive.org/web/20190905071206/https://www.capitalone.com/bank/savings-accounts/online-money-market-account/?360b_MM_WWW_MMBAU_HP_EXP5_CO_1    (last modified Sept. 5, 2019) (last accessed Sept. 17, 2025).

[8] https://web.archive.org/web/20220927071217/https://www.nerdwallet.com/best/banking/money-market-accounts    (last    modified    Sept.    27,    2022)    (last    accessed    Sept.    18,    2025). https://web.archive.org/web/20230929202745/https://www.nerdwallet.com/best/banking/money-market-accounts    (last    modified    Sept.    29,    2023)    (last    accessed    Sept.    14,    2025); https://web.archive.org/web/20240915044540/https://www.nerdwallet.com/best/banking/money-

11.     Capital One's conduct has deprived Plaintiffs and Class members of interest payments they would have received if Capital One kept its promises to their 360 Money Market customers. Accordingly, Plaintiffs bring this action on behalf of themselves and others similarly situated.

## PARTIES

### A. PLAINTIFFS

12.     Plaintiff Jeff Arbeit ("Arbeit") is currently a resident of Iowa and during portions of the Relevant Time Period, defined *infra*, was a resident of New York. Plaintiff Arbeit maintained a 360 Money Market account with Capital One at least from August 2019 through June 2023.

13.     Plaintiff Selena Kansal ("Kansal") is, and throughout the Relevant Time Period has been, a resident of Pennsylvania and maintained a 360 Money Market account with Capital One at least from July 2019 through December 2024.

14.     Plaintiff Stuart Swanson ("Swanson") is, and throughout the Relevant Time Period has been, a resident of Illinois and maintained a 360 Money Market account with Capital One at least from January 2019 through July 2025.

15.     Plaintiff Keith Flowers ("Flowers") is, and throughout the Relevant Time Period has been, a resident of Texas and maintained a 360 Money Market account with Capital One from at least 2017 through 2024.

market-accounts (last modified Sept. 15, 2024) (last accessed Sept. 14, 2025); https://web.archive.org/web/20250519080449/https://www.nerdwallet.com/best/banking/money-market-accounts (last modified May 19, 2025) (last accessed Sept. 14, 2025).

16.     Plaintiff Susan Colowick ("Colowick") is currently a resident of Tennessee, and during portions of the Relevant Time Period, was also a resident of Pennsylvania and New York. Ms. Colowick maintained a 360 Money Market account with Capital One from 2018 through 2025.

17.     Plaintiff Ryan Baker ("Baker") is, and throughout the Relevant Time Period has been, a resident of Virginia and maintain a 360 Money Market Account with Capital One from at least 2018 through the present.

18.     All Plaintiffs here have held 360 Money Market account balances of over $10,000 for at least a portion of the Relevant Time Period and long enough to accrue interest on those balances.

19.     Had each Plaintiff known that from early 2020 onward, the 360 Money Market account offered inferior, low interest rates and yield, each would have moved his or her funds invested in the 360 Money Market -account to an account that earned higher interest—either a 360 Performance Savings account or an account with another banking institution offering competitive interest rates.  No rational person would maintain an account with more restrictions earning less interest than an account with less restrictions earning significantly and materially greater interest (at times, in excess of 500% more).

20.     Plaintiffs and other members of the putative class and subclasses have suffered monetary harm as a result of Capital One's bad faith, deceptive, and unscrupulous conduct.

## B. DEFENDANTS

21.     Defendant Capital One, N.A. (previously defined as "CONA") is a national bank with its principal place of business in McLean, Virginia. Defendant Capital One, N.A. is a wholly owned subsidiary of Capital One Financial Corporation.

22.    Defendant Capital One Financial Corporation (previously defined as "COFC") is a holding company incorporated in the State of Delaware with its principal place of business in McLean, Virginia.

23.    Throughout the Relevant Time Period, CONA and COFC have jointly operated Capital One's web site. The "terms and conditions" on Capital One's webpages pertaining to its banking products "refer to Capital One and its affiliates and related entities as 'we,' 'us' and 'our.' This includes Capital One Financial Corporation, Capital One, N.A. and each of their successors, assigns, agents, and representatives." Capital One's web site is operated jointly by CONA and COFC. It also states: "The information contained on the Site, including its arrangement, (other than images licensed from third parties), are copyright ©2024 by Capital One Services, LLC." COFC's 2025 Form 10-K (Annual Report) states: "We maintain a web site at www.capitalone.com." COFC advertises and promotes Capital One online savings accounts via the Capital One web site and benefits financially from customers' deposits into those savings accounts. In Note 8 to its 2022 Form 10-K (Annual Report), COFC states: "Our deposits, which include checking accounts, money market deposits, negotiable order of withdrawals, savings deposits and time deposits, represent our largest source of funding for our assets and operations." Deposits with CONA allow COFC to lend money for profit. *See* COFC 2025 Form 10-K (Annual Report) at 6 ("Our consolidated total net revenues are derived primarily from lending to consumer and commercial customers net of funding costs associated with our deposits, long-term debt and other borrowings.").

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more Class members; the matter in controversy

exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one Plaintiff and member of the Class is a citizen of a state different from Defendants.

25.    This Court has personal jurisdiction over Defendants because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

26.    Venue also is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

## FACTUAL ALLEGATIONS

27.    Plaintiffs and Class members all held 360 Money Market accounts with balances of $10,000 or more during all or portions of the Relevant Time Period (defined *infra*).

28.    The 360 Money Market account disclosures set forth the "the legal terms of [a customer's] 360 Money Market account[,]" are "automatically agree[d] to" when a customer "submit[s] an application to open account."[9]

29.    Capital One drafted the disclosures and in those disclosures included a Virginia choice of law provision for all claims arising under contract.

### A.    SAVINGS ACCOUNT OR MONEY MARKET ACCOUNT

30.    For purposes of bank deposit accounts, interest is the percentage fee earned by depositors in exchange for allowing a bank to use the depositor's funds.[10] This amount is generally

---

[9]  https://www.capitalone.com/bank/disclosures/savings-accounts/online-money-market-account/ (last updated Sept. 30, 2025) (last accessed Oct. 1, 2025).

[10] Capital One, Understanding Interest, July 2, 2025, *at* https://www.capitalone.com/bank/money-management/banking-basics/understanding-interest/ ("So, are you a lender? You may not think of yourself as one, but if you have a bank account, you're basically lending money to the bank. Do you consider yourself a borrower? Using a credit card is essentially borrowing from a line of credit, a preset amount of money that the card issuer has agreed to lend you.").

stated as a percentage of the depositor's balance. The annual percentage yield ("APY") reflects the total, compounded interest rate earned over the course of the year. The higher the APY, the more money an account holder earns on the funds it has deposited with a bank.

31.     APY and interest rates are correlated to interest rates set by the Federal Reserve. As Capital One represents, news of higher interest rates set by the Federal Reserve means more money for depositors: "[f]or people with savings accounts, a hike in the interest rate could be good news. It means the money in the bank could earn more each month. When you see news of a federal interest rate hike, it can be a good time to deposit more money into your savings."[11]

32.     While savings accounts afford depositors the ability to save and grow over time, money market accounts are commonly understood to offer higher interest rates compared to savings accounts.[12] However, to take advantage of the money market interest rate, depositors are usually subject to higher minimum balance requirements.[13]

33.     Other than the higher deposit threshold typically needed to earn high interest on a money market account, there is no material difference between a money market account and a savings account. In fact, Capital One has described its 360 Money Market account as a "type of savings account that earns interest."[14] As Capital One explains:

---

[11] https://www.capitalone.com/bank/money-management/banking-basics/what-is-the-federal-reserve/ (last accessed Sept. 8, 2025).

[12] https://www.cnbc.com/select/money-market-account-vs-high-yield-savings-account/#:~:text=What%20is%20a%20money%20market,via%20debit%20card%20or%20check (last accessed Sept. 15, 2025).

[13] *Id.*

[14] https://web.archive.org/web/20190905074528/https://www.capitalone.com/bank/savings-accounts/online-money-market-account/ (dated Sept. 5, 2019) (last accessed Sept. 18, 2025).

## What's the difference between money market accounts, savings accounts and CDs?

While a money market savings account is a type of savings account, it's different than your typical savings account. Overall, the greatest difference between a money market account vs. a savings account is the Annual Percentage Yield (APY). The APY is the effective annual rate of return—in other words, the APY (along with how much money you have in your account) determines how much your account will earn in interest each year.[2]

Money market savings accounts generally require you to maintain a higher balance to earn the higher rate. Depending on the account, this could be a few hundred dollars or more than $10,000. With a Capital One 360 Money Market account, you need a balance of at least $10,000 to get the highest rate.

### B.    CAPITAL ONE LAUNCHES ITS 360 MONEY MARKET ACCOUNT

34.    In 2016, Capital One launched its 360 Money Market account, advertising it as a type of a savings account designed to hold large deposits for extended periods of time. Consequently, Capital One sought to attract 360 Money Market account customers that could consistently maintain balances of $10,000 or more.

35.    Capital One advertised its 360 Money Market account as having "one of **the nation's top rates** . . . for accounts with balances of $10,000 or more." (emphasis added).[15] Capital One further touted its 360 Money Market account as a "high-interest, fee-free" account with "savings growth for the long haul[,]" inviting its customers to "rest easy knowing [their] money's safe and sound."[16] Capital One promised its customers that they could "[t]urn savings into

---

[15] https://web.archive.org/web/20161013011514/https://www.capitalone.com/online-money-market-account/?Log=1&EventType=Link&ComponentType=T&LOB=MTS%3A%3AL0RT6ME8Z&PageName=Home+Page+Dynamic&ComponentName=primary_nav&ContentElement=p-bn-3%3BMoney+Market+Account&TargetLob=MTS%3A%3ALCTMNE8UU&TargetPageName=360+Money+Market+Account&referer=https%3A%2F%2Fwww.capitalone.com%2Fhomepage-dynamic (dated Oct. 13, 2016) (last accessed Sept. 9, 2025).

[16] https://web.archive.org/web/20161013011514/https://www.capitalone.com/online-money-market-account/?Log=1&EventType=Link&ComponentType=T&LOB=MTS%3A%3AL0RT6ME8Z&PageName=Home+Page+Dynamic&ComponentName=primary_nav&ContentElement=p-bn-3%3BMoney+Market+Account&TargetLob=MTS%3A%3ALCTMNE8UU&TargetPageName=

earnings" by choosing "more with 360 Money Market and one of the nation's best rates."[17] As

Capital One put it in 2019, 360 Money Market accounts represent "high-yield" and "high interest"

"set it and forget it" opportunities to "put your savings to work."[18]



────────────────────

360+Money+Market+Account&referer=https%3A%2F%2Fwww.capitalone.com%2Fhomepage-dynamic (dated Oct. 13, 2016) (last accessed Sept. 9, 2025); https://web.archive.org/web/20170207073445/https://www.capitalone.com/online-money-market-account/ (dated Feb. 7, 2017) (last accessed Sept. 9, 2025).

[17] *See id.*

[18] https://web.archive.org/web/20190905074528/https://www.capitalone.com/bank/savings-accounts/online-money-market-account/ (dated Sept. 5, 2019) (last accessed Sept. 18, 2025).



A high-yield MMA rate that saves as hard as you do.

It's time to put your savings to work.



**Do more with your savings.**
Don't just set it and forget it—grow it. A 2.00% APY money market savings rate on total account balances $10,000 or more means you'll get more for saving more. It's time to turn dreaming into doing.

**Keep your savings saved.**
Your savings are where your dreams are. FDIC-insured money market accounts help keep your savings safe (up to the allowable limits).

36.    At the time Capital One started advertising its 360 Money Market accounts, it also offered a 360 Savings account. For customers with less than $10,000, Capital One steered those depositors to 360 Savings accounts, advising that if customers "[h]ave less than [$10,000]," they could still "earn a great everyday rate" by opening a 360 Savings account.[19]

---

[19] https://web.archive.org/web/20161013011514/https://www.capitalone.com/online-money-market-account/?Log=1&EventType=Link&ComponentType=T&LOB=MTS%3A%3AL0RT6ME8Z&PageName=Home+Page+Dynamic&ComponentName=primary_nav&ContentElement=p-bn-

37.    For those with balances of $10,000 or more, Capital One offered a higher interest rate on its 360 Money Market accounts as compared to its 360 Savings accounts, steering those with higher balances into their 360 Money Market accounts. Thus, those who could maintain a balance of $10,000 or more would, of course, deposit their funds in an account that earned higher interest when faced with the choice of making more money or less. When the 360 Money Market accounts were first offered, those whose 360 Money Market account balances fell below $10,000 would still earn interest, but not as much as those with account balances of $10,000 or more until their account once again reached $10,000.

38.    Capital One has also frequently characterized its 360 Money Market account as a type of "Savings Account" on its web site until it removed all references to the account type in September 2019,[20] including referring to the 360 Money Market account as having "one of the nation's top savings rates."[21]

39.    Capital One also advertised its 360 Money Market account as an "online and mobile" account. As Capital One represents: "One benefit of most online banks is that they usually don't have the same costs as physical locations. Because of that, they might be able to pass some of their savings to you with lower fees and higher interest savings rates on your deposits. . . . A big difference between online savings vs. traditional savings accounts is how much interest you can earn. Online banks often offer higher interest rates on savings accounts than traditional

---

3%3BMoney+Market+Account&TargetLob=MTS%3A%3ALCTMNE8UU&TargetPageName=360+Money+Market+Account&referer=https%3A%2F%2Fwww.capitalone.com%2Fhomepage-dynamic (dated Oct. 13, 2016) (last accessed Sept. 9, 2025).

[20] https://web.archive.org/web/20180527212002/https://www.capitalone.com/bank/savings-accounts/online-money-market-account/ (dated May 27, 2018) (last accessed Sept. 9, 2025).

[21] https://web.archive.org/web/20180302141815/https://www.capitalone.com/ (dated Mar. 2, 2018) (last accessed Sept. 10, 2025).

banks."[22] Consequently, the term "high interest" or "high-yield," when applied to an online savings account, is understood to mean that the interest rate is competitive with other online savings accounts.

40.     Indeed, Capital One compares its money market accounts to other "high-yield savings accounts:"

### How does a money market account compare to a high-yield savings account?

When you're considering a money market account vs. a high-yield savings account, you'll find them to be very similar at first glance. Both usually require a higher minimum deposit, both offer comparable interest rates and both usually have similar restrictions on the number of "convenient" withdrawals or transfers you're allowed to make.

The main difference is that money market savings accounts are usually used for more long-term savings goals while high-yield savings accounts are used for shorter-term goals.[6] Either way, both could help your savings grow.

[23]

41.     Capital One explains that it offers higher interest on its money market accounts in exchange for account holders keeping "extra money in [their] account[s]," because the bank can then use those funds to lend them out to others or make other investments in the stock market.

### How does a money market account work?

If you're looking into opening a money market account, how it works might be of interest to you. For customers, a money market account works similar to a savings account: You deposit your savings into the account, you start earning interest and your money is available when you want it. How often do money market accounts pay interest? While it depends on your bank and your specific account, MMAs are usually compounded daily and paid monthly.[10] So why the higher savings rate? What's the catch? Generally, the bank is giving you extra interest for keeping extra money in your account. The bank rewards you with the higher APY incentive if you meet certain restrictions, because the bank may loan your money out to those who need it or make other money market investments in the stock market.[7]

---

[22] https://www.capitalone.com/bank/money-management/banking-basics/online-banking-vs-traditional-banking/ (dated Aug. 21, 2024) (last accessed Sept. 15, 2025).

[23]https://web.archive.org/web/20210129044512/https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-money-market-account/ (last updated Aug. 7, 2018) (last accessed Oct. 2, 2025).

42.     On their 360 Money Market account web page frequently asked questions, Capital One explained the difference between its 360 Money Market and 360 Savings accounts:



43.     At first, Capital One's offered interest rate on the 360 Money Market accounts was closely related to the federal funds effective rate, which between 2008 and 2017 was at historically low levels. As of January 2017, the federal funds effective rate stood at 0.65%. From November 2015 and April 2019, the rate increased from 0.12% to 2.42% as a result of a series of increases implemented by the Federal Reserve. In response to these increases, Capital One gradually raised the APY on its 360 Money Market account from 1.00% to 2.00%, reaching its peak in or around August 2019.

44.     After that, the tie between the federal funds rate and the interest earned by 360 Money Market account holders loosened until it unraveled entirely. Even as the federal funds effective rate climbed sharply, reaching 5.33% by August 2023 and remaining at that peak rate

until August 2024, Capital One never raised the interest rate on the 360 Money Market accounts to even approach the federal funds effective rate—or even to the 2.0% interest rate it was offering in August 2019—again.

45.    From its inception through mid-September 2019, the 360 Money Market account was Capital One's highest APY earning consumer savings account product.

### C.    CAPITAL ONE CREATES ITS 360 PERFORMANCE SAVINGS ACCOUNT

46.    On or around September 16, 2019, Capital One introduced a new online savings account, dubbed the Capital One 360 Performance Savings account.[24]

47.    Within a few days of the 360 Performance Savings account's introduction, Capital One removed references to both its 360 Savings and its 360 Money Market accounts from its web site. In fact, even selecting "View All Accounts" or "View All Savings Accounts" or "View and Compare Rates" on Capital One's web site's homepage drop-down menu would not permit a customer to obtain any information about Capital One's 360 Money Market account.[25]

48.    Today, even a Google search redirects those searching for Capital One's 360 Money Market account to its 360 Performance Savings account—blurring the distinction between the two and causing confusion.[26]

---

[24] https://web.archive.org/web/20190916153024/https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/ (dated Sept. 16, 2019) (last accessed Oct. 3, 2025).

[25] https://web.archive.org/web/20191201151515/https://www.capitalone.com/bank/savings-accounts/ (dated Dec. 1, 2019) (last accessed Sept. 9, 2025); https://web.archive.org/web/20191201151519/https://www.capitalone.com/bank/open-an-account/ (dated Dec. 1, 2019) (last accessed Sept. 9, 2025).

Even today, the only mention of the 360 Money Market Account on Capital One's web site is within the 360 Money Market Account disclosures, which are buried on Capital One's web site and only accessible with access to the link itself (i.e., there are no links to the disclosures from www.capitalone.com).

[26] Last searched on Sept. 15, 2025.



49.    Capital One's deception and confusion began as soon as it launched the 360 Performance Savings account.

50.    On September 17, 2019, Capital One advertised its 360 Money Market account on its web site as earning 2.00% APY for balances over $10,000 and continued to represent that the account type "pays one of the nation's best savings rates for accounts with balances of $10,000 or more."[27]

---

[27] https://web.archive.org/web/20190917195820/https://www.capitalone.com/bank/open-an-account/ (Sept. 17, 2019) (last accessed Sept. 9, 2025).



51.    By the next day, on September 18, 2019, Capital One's web site dropped all reference to the 360 Money Market account, instead showed only the 360 Performance Savings account APY, and had lowered the interest rate for the 360 Money Market account to 1.9% to match the 360 Performance Savings interest rate.[28]

 

---

[28] https://web.archive.org/web/20190918192359/https://www.capitalone.com/bank/open-an-account/ (Sept. 18, 2019) (last accessed Sept. 9, 2025).

52.     While for a short period, the interest rates for 360 Money Market account and 360 Performance Savings account were identical, this did not last. By January 2020, three months after the 360 Performance Savings account was launched, Capital One's 360 Performance Savings APY exceeded that for its 360 Money Market account holders with balances over $10,000. In the years that followed, the gap between these two rates grew. By January 2024, Capital One's 360 Money Market APY was at 0.8%, while the 360 Performance Savings APY had ballooned to 4.35%.

53.     Although Capital One required 360 Money Market account holders to keep more than $10,000 balances to earn the "highest rate," Capital One adopted a single interest rate for its 360 Performance Savings account. So, Plaintiffs and Class members who Capital One said it was rewarding with "extra interest" for keeping "extra money" in the bank for Capital One to lend out and use to invest for its own purposes were earning less interest on a percentage basis than 360 Performance Savings account holders with only $1.00 in their accounts.

54.     Capital One failed to correct representations that the 360 Money Market account carried the highest interest rates for high-balance customers when, in fact, the 360 Performance Savings account would be preferential for depositors with any balance amount.

**D.      CAPITAL ONE INCREASES THE INTEREST RATE ON 360 PERFORMANCE SAVINGS ACCOUNT WHILE DEPRESSING THE INTEREST RATE ON THE 360 MONEY MARKET ACCOUNT**

55.     After introducing the 360 Performance Savings account, Capital One failed to act in good faith with respect to adjusting the variable interest rate for its 360 Money Market accounts. Instead, from September 2019 through December 2020, Capital One dropped the rate paid on its 360 Money Market account from 2.00% APY to 0.30% APY and then froze that rate at 0.30% from December 2020 to June 2022. During that same time frame the APY on the 360 Performance account never dropped below 0.40%.

56.    The federal funds effective rate skyrocketed from approximately 0.08% in February 2022 to 5.33% in August 2024. In response to the rising rates, Capital One raised the interest rate on its 360 Money Market account to a paltry 0.797%. At the same time, the 360 Performance Savings interest rate increased from 0.399% to 4.169%, over five times the interest rate paid on Capital One's 360 Money Market accounts.

57.    This trend of interest rates has continued through 2025. In June 2025, for example, although Capital One raised its Money Market account rate to .995%, the 360 Performance Savings rate still was multiples higher at 3.445%.



58.    As shown in the chart above, Capital One raised interest rates on the 360 Performance Savings account in response to market conditions, but kept interest rates on the 360 Money Market account, which has been marketed as sold as a unique high-interest product for high-balance customers, artificially low, deliberately freezing rates even as effective federal funds rate rose and market conditions changed. For example, from July 2022 until at least May 2025, the APY on 360 Money Market accounts remained at 0.80%, even though Capital One raised its 360 Performance Savings interest rate *at least nine times* during this same period.

59.     Capital One's disclosures for both the 360 Money Market accounts and the 360 Performance Savings accounts did not draw any distinction between how interest would be earned and set on the two different account types, instead both disclosures contain the exact same language as to how and when interest rates and APY will be adjusted, namely that "[t]he interest rates and annual percentage yields are variable and may change at any time at [Capital One's] discretion."[29]

60.     There is no good faith basis for Capital One's decision to provide significantly higher interest rates to 360 Performance Savings customers than to its 360 Money Market customers, particularly where both accounts are governed by the same discretionary interest rate provision in their governing agreements and both were marketed identically as high-yield, high-interest accounts. Capital One honored its high-yield commitment to its 360 Performance Savings account holders while simultaneously ignoring its obligation to its 360 Money Market account holders.

### E.     CAPITAL ONE CONTINUES TO OBFUSCATE THAT MONEY MARKET ACCOUNT HOLDERS ARE WORSE OFF THAN 360 PERFORMANCE SAVINGS ACCOUNT HOLDERS AND MISREPRESENTS THAT ITS MONEY MARKET ACCOUNTS ARE HIGH YIELD AND COMPARABLE TO HIGH-YIELD SAVINGS ACCOUNTS

61.     Although Capital One stopped advertising 360 Money Market account products on its web site, it continues to misrepresent the nature of its money market accounts to existing 360 Money Market accountholders.

62.     Since 2021, Capital One's web site has included a page entitled *What is a Money Market Account?*[30] Although this page contains no reference to Capital One's 360 Money Market

---

[29] https://www.capitalone.com/bank/disclosures/savings-accounts/online-money-market-account/ (last accessed Oct. 3, 2025); https://www.capitalone.com/bank/disclosures/savings-accounts/online-performance-savings-account/ (last accessed Oct. 3, 2025).

[30] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-money-market-account/ (last accessed Oct. 3, 2025).

account, the article makes substantially similar representations Capital One made to 360 Money Market account holders starting in 2016. These representations include the repeated, explicit representations that money market accounts have *higher interest rates compared to savings accounts*, *comparable interest rates to high-yield savings accounts*, and are preferential for customers that can maintain a higher minimum balance:

      a.      "A money market account is a unique savings account that generally earns you a higher savings rate than traditional savings accounts."

      b.      "Also, with the higher savings return benefits of a money market account, there may be certain restrictions. Often, money market account savings can require a higher minimum balance than traditional savings accounts."

      c.      "So why the higher savings rate than traditional savings accounts? What's the catch? Generally, the bank is giving you extra interest for keeping extra money in your account. The bank rewards you with the higher APY incentive if you meet certain requirements."

      d.      "[Money market accounts] usually have higher savings interest rates than a typical savings account."

      e.      "If you can't afford the minimum balance, a traditional savings account may suit you better."

      f.      "When you're considering a money market account vs. a high-yield savings account, you'll find them to be very similar at first glance. Both might require a higher minimum deposit, both might offer comparable interest rates . . . ."

63.     Given that Capital One itself offers the 360 Money Market accounts, it is not only reasonable—but likely—that existing 360 Money Market account holders would understand that

these representations relate to *their* money market accounts and these representations have the effect of deterring 360 Money Market accountholders from investigating whether Capital One was offering higher interest in a different consumer savings account, which also offered the added benefit of not requiring a minimum account balance.

64.    At no point during the Relevant Time Period did Capital One correct its prior representations claiming the 360 Money Market account provided one of the nation's highest rates for high balance account holders on its web site; nor did it reveal that a new account type would provide a higher interest rate.

65.    Capital One was and remains financially motivated not to inform 360 Money Market account holders that the new 360 Performance Savings account was available to them, and Plaintiffs' monthly statements never disclosed that Capital One had introduced the 360 Performance Savings product with a higher interest rate.

66.    For every day that the interest rate for 360 Performance Savings account outperforms the 360 Money Market account interest rate, Capital One profits from paying less interest to those account holders than it otherwise would.

F.    **CAPITAL ONE'S MISREPRESENTATIONS CAUSED MEASURABLE ECONOMIC HARM TO 360 ACCOUNT HOLDERS**

67.    Capital One misrepresented the nature of its 360 Money Market account to account holders by, *inter alia*, advertising:

a.    the 360 Money Market account as a "high-interest" and "high-yield" account with "one of the nation's top savings rates," when it did not earn rates or yields that were high or even competitive compared to Capital One's own savings account products and money market accounts offered by other banks;

b.      the 360 Money Market account as specifically "one of the nation's top rates . . . for accounts with balances of $10,000 or more[,]" when Capital One did not reward account holders with a top rate even if they had deposited and maintained the minimum amount;

c.      the 360 Money Market account as a way for account holders to "set it" and "forget it" and "rest easy knowing [their] money's safe and sound" for the "long haul[,]" even though Capital One would later artificially depress 360 Money Market account rates by disconnecting them from the Federal Reserve Effective Rate, despite having previously promised that the Federal Reserve's "hike in the interest rate could be good news. It means the money in the bank could earn more each month. When you see news of a federal interest rate hike, it can be a good time to deposit more money into your savings."; and,

d.      that money market accounts have higher interest rates compared to savings accounts, comparable interest rates to high-yield savings accounts, and are preferential for customers that can maintain a higher minimum balance.

68.     Given these representations, Plaintiffs and Class members were entitled to interest rates set through Capital One's honest and good-faith exercise of contractual discretion. Instead, Capital One introduced the 360 Performance Savings account while failing to adjust rates on the 360 Money Market account to comparable levels, despite both accounts being advertised nearly identically and their disclosures as to interest rates being likewise identical. By doing so, Capital One acted unfairly, deceptively, and in bad faith, thereby breaching its contract with Plaintiffs and the members of the proposed Class and violating applicable consumer protection statutes and/or common law, as further alleged herein.

69.     There is no rational basis for a consumer to choose the 360 Money Market account over the 360 Performance Savings account as the two products are substantively identical in all respects except that the 360 Money Market account carries a meaningfully lower interest rate and requires a higher minimum balance.

70.     Each of the Plaintiffs herein had a 360 Money Market account prior to and for some period of time following Capital One's creation of the 360 Performance Savings account in or around September 2019 and when the interest rates for the 360 Performance Savings account exceeded that of the 360 Money Market account and maintained a balance in excess of $10,000.

71.     Therefore, each Plaintiff suffered monetary loss in the form of foregone interest payments they would have received had Capital One exercised its discretion honestly and in good faith.

72.     Capital One's bad faith conduct is not protected under the National Bank Act, because state laws regarding contracts and torts generally "are not preempted." 12 C.F.R. § 7.4007(c).

73.     The United States Office of the Comptroller of the Currency has warned that "[u]nfair or deceptive acts or practices are unlawful under federal and State law," and that the "consequences of engaging in practices that may be unfair or deceptive under federal or state law can include litigation, enforcement actions, monetary judgments, and harm to the institution's reputation." OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 OCC CB LEXIS 16, at *2, *5 (Mar. 22, 2002). The OCC has cautioned banks to "ensure that customers receiving the information can reasonably be expected to understand the information about products or services—including any material limitations—without having to do 'detective' work." *Id.* at *14-*15. As explained herein, Capital One has blatantly ignored this guidance.

## CLASS ALLEGATIONS

74.    This action is brought by Plaintiffs, for themselves and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

75.    The time period from September 16, 2019 through the present is referred to as the "Relevant Time Period."

76.    Plaintiffs seek to represent a nationwide Class defined as follows:

> All persons who have been Capital One 360 Money Market account holders during the Relevant Time Period, and at any point, had a balance in their 360 Money Market account in excess of $10,000.

77.    Plaintiff Jeff Arbeit seeks to represent a proposed subclass ("New York Subclass"). defined as follows:

> All persons who resided in New York during the Relevant Time Period who have been Capital One 360 Money Market account holders since Capital One created the 360 Performance Savings account and continuing to the present, where those accounts at any point in time during the Relevant Time Period held over $10,000.

78.    Plaintiff Selena Kansal seeks to represent a proposed subclass ("Pennsylvania Subclass") defined as follows:

> All persons who resided in Pennsylvania during the Relevant Time Period who have been Capital One 360 Money Market account holders since Capital One created the 360 Performance Savings account and continuing to the present, where those accounts at any point in time during the Relevant Time Period held over $10,000.

79.    Plaintiff Stuart Swanson seeks to represent a proposed subclass ("Illinois Subclass") defined as follows:

> All persons who resided in Illinois during the Relevant Time Period who have been Capital One 360 Money Market account holders since Capital One created the 360 Performance Savings account and continuing to the present, where those accounts at any point in time during the Relevant Time Period held over $10,000.

80.    Plaintiff Keith Flowers seeks to represent a proposed subclass ("Texas Subclass") defined as follows:

All persons who resided in Texas during the Relevant Time Period who have been Capital One 360 Money Market account holders since Capital One created the 360 Performance Savings account and continuing to the present, where those accounts at any point in time during the Relevant Time Period held over $10,000.

81.     Plaintiff Ryan Baker seeks to represent a proposed subclass ("Virginia Subclass") defined as follows:

All persons who resided in Virginia during the Relevant Time Period who have been Capital One 360 Money Market account holders since Capital One created the 360 Performance Savings account and continuing to the present, where those accounts at any point in time during the Relevant Time Period held over $10,000 ("Virginia Subclass").

82.     Unless specifically indicated otherwise, all allegations herein concerning the Class include and apply equally to the Subclasses, individually and collectively.

83.     Excluded from the Class are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with any of Defendants' partners, subsidiaries, affiliates or joint ventures, and/or any persons who are members of any certified class in *In re: Capital One 360 Savings Account Interest Rate Litig.*, No. 1:24-md-03111-DJN (E.D. Va.).

84.     The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. At all relevant times, there were thousands of 360 Money Market account holders. The precise number of Class members and their identities are unknown to Plaintiffs at this time but can be determined through discovery in Defendants' records.

85.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to Class are:

a.      Whether Defendants adjusted (or did not adjust) the interest rate associated with 360 Money Market account holders dishonestly, unfairly, and/or in bad faith;

b.      Whether Defendants breached the covenant of good faith and fair dealing implied by the law into its contracts with 360 Money Market account holders;

27

c.    Whether Defendants' conduct violates the Virginia Consumer Protection Act or the other state consumer protection statutes alleged herein;

d.    Whether Defendants' conduct caused Plaintiffs and the Class members damages.

e.    The amount of damages suffered by Plaintiffs and Class members;

f.    Whether Defendants' conduct violates principles of quasi-contract and/or promissory estoppel;

g.    Whether Defendants' conduct caused Defendants to be unjustly enriched;

h.    The amount of restitution to which Plaintiffs and Class members are entitled;

i.    Whether Plaintiffs and Class members are entitled to treble and/or punitive damages; and,

j.    Whether Plaintiffs and Class members are entitled to a reasonable award of attorneys' fees, interest, and costs of suit.

86.    Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because they were all 360 Money Market account holders and received the same interest rate, and because Defendants' representations on its web site and contractual terms are the same in all material respects as to all Class members.

87.    Plaintiffs will adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of Class members. Plaintiffs have retained attorneys who are experienced and capable of prosecuting class actions and complex litigation. Plaintiffs' attorneys will actively conduct and be responsible for prosecuting this litigation, and have adequate resources, experience, and commitment to litigate this matter.

88.    A class action is superior to any other method available for the fair and efficient adjudication of this controversy, because it would be impractical and unduly burdensome for each of the individual Class members to bring a separate action. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the respective Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Moreover, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

89.    Defendants have acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

90.    Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from Defendants' records. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

91.    To the extent reliance is an element of any of the claims asserted herein, Plaintiffs and all Class members uniformly have relied on Defendants' conduct. Other than the interest rate paid on the accounts, the 360 Money Market account and the 360 Performance Savings account are identical. No rational person would maintain an identical account that paid materially lower interest absent Defendants' wrongful conduct.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST CAPITAL ONE, N.A.
### (on behalf of the Class)

92.     Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

93.     The 360 Money Market account Disclosures, which contain the "legal terms" of the account holders' 360 Money Market accounts, provide that 360 Money Market accounts are "subject to both federal law and the laws of the state of Virginia[.]"[31]

94.     The contract between the respective Plaintiffs (and other Class members) and CONA, previously described herein, provides that "interest rates and annual percentage yields are variable and may change at any time at our [i.e., CONA's] discretion."

95.     A covenant of good faith and fair dealing is implied by law in CONA's contracts with 360 Money Market account customers, and provides that Capital One, N.A. must exercise contractual discretion honestly and in good faith.

96.     Although CONA had discretion to set the interest rate paid on the 360 Money Market account, that discretion is subject to the covenant of good faith and fair dealing.

97.     CONA breached the covenant of good faith and fair dealing by paying a materially lower rate of interest for its 360 Money Market account, which CONA represented as having superior and/or similar characteristics to other savings accounts products. As alleged above, CONA breached this covenant by surreptitiously retracting its representations and promises that:

---

[31] https://www.capitalone.com/bank/disclosures/savings-accounts/online-money-market-account/ (last modified on Sept. 30, 2025) (last accessed Oct. 2, 2025).

a.      the 360 Money Market account paid "one of the nation's best savings rates for accounts with balances of $10,000 or more" and more generally that the 360 Money Market account paid "one of the nation's best rates" for savings accounts;

b.      the 360 Money Market account paid "one of the nation's top savings" rates;

c.      360 Money Market account depositors could deposit $10,000 or more ("set it") and "forget" about that deposit and "rest easy knowing [their] money's safe and sound" with "high interest" "savings growth for the long haul" in their accounts;

d.      CONA would continue to treat 360 Money Market account depositors fairly by paying higher interest rates;

e.      the 360 Money Market account was a "high interest" and "high-yield" account;

98.      Instead of exercising its discretion to adjust the interest rate on the 360 Money Market account after market interest rates rose, CONA instead created a new account, the"360 Performance Savings" account, which featured a higher APY than the 360 Money Market account. CONA's conduct is dishonest and unfair because CONA concealed that the 360 Performance Savings account offered a higher APY than the 360 Money Market account, which CONA had told customers was a uniquely high interest, high-yield account for its high balance customers. Because CONA failed to pay the same high-interest, high-yield interest rate on the 360 Money Market account that it paid on the 360 Performance Savings account, Plaintiffs and Class members were harmed.

99.      CONA's breach damaged Plaintiffs and members of the putative Class.

## COUNT II

**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT,**
**VA. CODE ANN. § 59.1-200,**
**AGAINST COFC**
**(on behalf of the Class and Virginia Subclass)**

100.    Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

101.    COFC is a "supplier" and the conduct described herein is a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

102.    As described above, while engaging in trade or commerce within the Commonwealth of Virginia during the Relevant Time Period, Defendant COFC:

a.    created a new account, the similarly branded and named "360 Performance Savings" account, which featured a higher APY than the 360 Money Market account, while failing to pay 360 Money Market account depositors the same APY as paid on the 360 Performance Savings account;

b.    concealed that the 360 Performance Savings account was not Capital One's only non-retirement online savings account and that the 360 Money Market account continued to exist with a much lower interest rate, which information is material to customers;

c.    engaged in unfair and deceptive practices by deceptively failing to correct representations in their communications with 360 Money Market account holders that they could earn higher interest elsewhere after having represented that the 360 Money Market account provided the highest interest rates to individuals with balances over $10,000;

d.     used the misrepresentations described above to induce customers to maintain deposits in their Money Market accounts in excess of $10,000; ; and,

e.    continuing to misrepresent the nature of its money market accounts by publishing and maintaining on its web site an explanation that money market accounts have higher interest than other traditional savings account products.

103.    The aforesaid fraudulent acts and practices are unlawful and prohibited by the provisions of the Virginia Consumer Protection Act, Va. Code. Ann. § 59.1-200, including, but not limited to, the following:

a.    "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (§ 59.1-200(A)(5));

b.    "Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (§ 59.1-200(A)(6));

c.    "Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (§ 59.1-200(A)(8));

d.    "Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (§ 59.1-200(A)(14)); and,

e.    "Violating any provision of § 18.2-178," i.e., "obtain[ing] by any false pretense or token, from any person, with intent to defraud, money" (§ 59.1-200(A)(57)).

104.    The Virginia Consumer Protection Act is "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code. Ann. § 59.1-197. Application of the Virginia Consumer Protection Act to Defendant COFC's conduct as alleged herein is proper because that conduct was committed by COFC in Virginia and COFC was unjustly enriched in Virginia.

105.    The aforesaid acts damaged Plaintiffs and members of the putative Class and/or Virginia Subclass.

106.    Plaintiffs the putative Class and/or Virginia Subclass are entitled to treble and/or punitive damages pursuant to Va. Code. Ann. § 59.1-204.

## COUNT III

### BREACH OF QUASI-CONTRACT AND UNJUST ENRICHMENT
### AGAINST ALL DEFENDANTS
### (on behalf of the Class)

107.    Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

108.    Plaintiffs and the Class conferred a benefit on Defendants by maintaining their cash in 360 Money Market accounts paying less interest than Plaintiffs and the Class should have rightfully received based on Defendants' conduct as alleged herein. Defendants knowingly retained this deposited cash and unjustly profited from the lower interest rate it paid to Plaintiffs and the Class.

109.    In the absence of a contract, Plaintiffs and the Class have no adequate remedy at law.

110.    Defendants' unjust enrichment can be remedied by ordering Defendants to provide restitution, and to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and the Class, all proceeds received from Plaintiffs and the Class as a result of the unlawful and/or inequitable conduct described herein.

## COUNT IV

### PROMISSORY ESTOPPEL
### AGAINST ALL DEFENDANTS
### (on behalf of the Illinois, New York, Pennsylvania, and Texas Subclasses)

111.    Plaintiffs Arbeit (New York), Swanson (Illinois), Flowers (Texas), and Kansal (Pennsylvania) re-allege and incorporate all other factual allegations set forth in this Complaint.

112.    Defendants promised that the 360 Money Market account would be "high-yield" / "high interest" and would pay "one of the nation's best savings rates for accounts with balances of $10,000 or more[,]" which were designed to induce customers to deposit funds in 360 Money Market accounts and/or keep funds in 360 Money Market accounts. Defendants then concealed that they had created a new, materially identical, similarly named online savings account, namely the 360 Performance Savings account, which paid a higher interest rate than the 360 Money Market account.

113.    Class members are presumed to have relied on Defendants' conduct. Other than the interest rate paid on the accounts, the 360 Money Market account and the 360 Performance Savings account are identical. No rational person would maintain an identical account that paid materially lower interest absent Defendants' wrongful conduct.

114.    Injustice can be avoided only by enforcing Defendants' promise.

### COUNT V

**VIOLATIONS OF**
**NEW YORK GENERAL BUSINESS LAW §§ 349, 350**
**AGAINST ALL DEFENDANTS**
**(on behalf of the New York Subclass)**

115.    Plaintiff Arbeit re-alleges and incorporates all other factual allegations set forth in this Complaint.

116.    New York Gen. Bus. Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

117.    New York Gen. Bus. Law § 350 further declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

118.    As described above, while engaging in consumer-oriented trade or commerce within the State of New York during the time period relevant hereto, Defendants:

a.      created a new account, the similarly branded and named "360 Performance Savings" account, which featured a higher APY than the 360 Money Market account, while failing to pay 360 Money Market account depositors the same APY as paid on the 360 Performance Savings account;

b.      concealed that the 360 Performance Savings account was not Capital One's only non-retirement online savings account and that the 360 Money Market account continued to exist with a much lower interest rate, which information is material to customers;

c.      engaged in unfair and deceptive practices by deceptively failing to correct representations in their communications with 360 Money Market account holders that they could earn higher interest elsewhere after having represented that the 360 Money Market account provided the highest interest rates to individuals with balances over $10,000;

d.      used the misrepresentations described above to induce customers to maintain deposits in their Money Market accounts in excess of $10,000; and,

e.      continuing to misrepresent the nature of its money market accounts by publishing and maintaining on its web site an explanation that money market accounts have higher interest than other traditional savings account products.

119.    The foregoing deceptive acts and practices were directed at consumers.

120.    As a result of Defendants' false, misleading, and deceptive misrepresentations and omissions, Plaintiff Arbeit and the members of the New York Subclass have suffered and continue to suffer economic injury.

121.    Plaintiff Arbeit and members of the New York Subclass suffered an ascertainable loss caused by Capital One's misrepresentations.

122.    On behalf of themselves and other members of the New York Subclass, Plaintiff Arbeit seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three-times actual damages, and reasonable attorneys' fees.

### COUNT VI

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1–201-9.2, AGAINST ALL DEFENDANTS**
**(on behalf of the Pennsylvania Subclass)**

123.    Plaintiff Kansal re-alleges and incorporates all other factual allegations set forth in this Complaint.

124.    As described above, while engaging in trade or commerce within Pennsylvania during the Relevant Period, Capital One:

a.    created a new account, the similarly branded and named "360 Performance Savings" account, which featured a higher APY than the 360 Money Market account, while failing to pay 360 Money Market account depositors the same APY as paid on the 360 Performance Savings account;

b.    concealed that the 360 Performance Savings account was not Capital One's only non-retirement online savings account and that the 360 Money Market account continued to exist with a much lower interest rate, which information is material to customers;

c.    engaged in unfair and deceptive practices by deceptively failing to correct representations in their communications with 360 Money Market account holders that they could earn higher interest elsewhere after having represented that the 360 Money Market account provided the highest interest rates to individuals with balances over $10,000;

d.      used the misrepresentations described above to induce customers to maintain deposits in their Money Market accounts in excess of $10,000;, and,

e.      continuing to misrepresent the nature of its money market accounts by publishing and maintaining on its web site an explanation that money market accounts have higher interest than other traditional savings account products.

125.    The aforesaid methods, acts, and practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by § 201-2 of the Unfair Trade Practices and Consumer Protection Law, including, but not limited to, the following:

a.      "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (§ 201-2(4)(v));

b.      "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (§ 201-2(4)(vii));

c.      "advertising goods or services with intent not to sell them as advertised" (§ 201-2(4)(ix)); and,

d.      "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" (§ 201-2(4)(xxi)).

126.    The aforesaid acts damaged Plaintiff Kansal and members of the putative Pennsylvania Subclass.

127.    Plaintiff Kansal and the putative Pennsylvania Subclass are entitled to actual damages, treble and/or punitive damages, costs and reasonable attorneys' fees, and such additional relief as the Court deems necessary and proper, pursuant to 73 P.S. § 201-9.2(a).

## COUNT VII

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE
BUSINESSES PRACTICE ACT, 815 ILL. COMP. STAT. § 505 ET SEQ.,
AGAINST ALL DEFENDANTS
(on behalf of the Illinois Subclass)**

128. The aforesaid acts damaged Plaintiff Swanson and members of the putative Illinois Subclass.

129. Plaintiff Swanson is a person as defined in the in the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1(c).

130. Pursuant to the ICFA, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2] . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

131. As described above, while engaging in trade or commerce within the State of Illinois during the time period relevant hereto, Capital One:

a. created a new account, the similarly branded and named "360 Performance Savings" account, which featured a higher APY than the 360 Money Market account, while failing to pay 360 Money Market account depositors the same APY as paid on the 360 Performance Savings account;

b. concealed that the 360 Performance Savings account was not Capital One's only non-retirement online savings account and that the 360 Money Market account

39

continued to exist with a much lower interest rate, which information is material to customers;

      c.     engaged in unfair and deceptive practices by deceptively failing to correct representations in their communications with 360 Money Market account holders that they could earn higher interest elsewhere after having represented that the 360 Money Market account provided the highest interest rates to individuals with balances over $10,000;

      d.     used the misrepresentations described above to induce customers to maintain deposits in their Money Market accounts in excess of $10,000; and,

      e.     continuing to misrepresent the nature of its money market accounts by publishing and maintaining on its web site an explanation that money market accounts have higher interest than other traditional savings account products.

132.    Plaintiff Swanson and the other members of the Illinois Subclass have been and continue to be damaged as a direct and proximate result of Capital One's violation of the ICFA.

133.    Plaintiff Swanson is entitled to pursue a claim on behalf of the Illinois Subclass against Capital One for actual damages, punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs to remedy Capital One's violations of the ICFA pursuant to 815 ILCS 505/10a.

**COUNT VIII**

**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT,**
**TEX. BUS. & COM. CODE § 17.41 ET SEQ.,**
**AGAINST ALL DEFENDANTS**
**(on behalf of the Texas Subclass)**

134.    Plaintiff Flowers re-alleges and incorporates all other factual allegations set forth in this Complaint.

135.    The Texas Deceptive Trade Practices Act ("Texas DTPA"), Tex. Bus. & Com. Code § 17.41 et seq., bars false, misleading, or deceptive acts or practices in the conduct of any trade or commerce and any unconscionable action or course of action.

136.    The Texas DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code § 17.44(a).

137.    Plaintiff Flowers is a "consumer" under Tex. Bus. & Com. Code § 17.45(4). The 360 Money Market account Disclosures refer to Capital One's "services" to account holders (*see id.* § 17.45(2)), including Electronic Fund Transfer (EFT) "services," a Mobile Deposit "service," and Automated Clearing House (ACH) External Transfer transactions.

138.    Defendants' actions constitute "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6).

139.    As described above, while engaging in trade or commerce within Texas, during the Relevant Period, Capital One:

    a.    created a new account, the similarly branded and named "360 Performance Savings" account, which featured a higher APY than the 360 Money Market account, while failing to pay 360 Money Market account depositors the same APY as paid on the 360 Performance Savings account;

    b.    concealed that the 360 Performance Savings account was not Capital One's only non-retirement online savings account and that the 360 Money Market account continued to exist with a much lower interest rate, which information is material to customers;

41

c.      engaged in unfair and deceptive practices by deceptively failing to correct representations in their communications with 360 Money Market account holders that they could earn higher interest elsewhere after having represented that the 360 Money Market account provided the highest interest rates to individuals with balances over $10,000;

d.      used the misrepresentations described above to induce customers to maintain deposits in their Money Market accounts in excess of $10,000;, and,

e.      continuing to misrepresent the nature of its money market accounts by publishing and maintaining on its web site an explanation that money market accounts have higher interest than other traditional savings account products.

140.    The aforesaid methods, acts, and practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by § 201-2 of the Unfair Trade Practices and Consumer Protection Law, including, but not limited to, the following:

a.      "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not" (Tex. Bus. & Com. Code § 17.46(b)(5));

b.      "advertising goods or services with intent not to sell them as advertised" (*id.* § 17.46(b)(9));

c.      "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (*id.* § 17.46(b)(12)); and,

d.      "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was

intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed" (*id.* § 17.46(b)(24)).

141.    The aforesaid acts damaged Plaintiff Flowers and members of the putative Texas Subclass.

142.    Plaintiff Flowers and the putative Texas Subclass are entitled to seek economic damages, three times economic damages, costs, attorneys' fees, injunctive relief, and any other relief which the Court deems proper.

143.    Pursuant to Section 17.505 of the Texas DTPA, Plaintiff Flowers is providing written notice to Defendants of the allegations in this Complaint and the amount of his damages, attorneys' fees, and expenses incurred. Defendants are hereby placed on notice for the reasons set forth in the DTPA Notice and this Complaint that Plaintiff Flowers demands restitution and/or damages, on behalf of himself and members of the Texas Subclass, pursuant to the Texas DTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, request that the Court award the following relief:

144.    Certify this action as a class action, appoint Plaintiffs as the Class representatives, and designate the undersigned as Class counsel;

145.    Declare Defendants' conduct unlawful;

146.    Enjoin Defendants from the unlawful conduct alleged herein;

147.    Award Plaintiffs and the Class (and Subclasses) damages under common law and/or by statute, including treble and/or punitive damages;

148.    Award Plaintiffs and the Class (and Subclasses) restitution and/or disgorgement;

149.    Award Plaintiffs attorney's fees, costs, and pre-judgment and post-judgment interest; and

150.    Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, demand a trial by jury on all triable issues.

Dated: October 6, 2025

Respectfully submitted,

/s/ Susan R. Podolsky
Susan R. Podolsky (VA Bar No. 27891)
**LAW OFFICE OF SUSAN R. PODOLSKY**
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Telephone: (571) 366-1702
Facsimile: (703) 647-6009
spodolsky@podolskylaw.com
*Local Counsel for Plaintiffs*

**GRANT & EISENHOFER P.A.**
Kelly Tucker*
Chad Holtzman*
Nathan Reeder*
123 Justison St., 7th Floor
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
ktucker@gelaw.com
choltzman@gelaw.com
nreeder@gelaw.com

**THE SCHALL LAW FIRM**
Brian Schall*
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 213-519-5976
brian@schallfirm.com

*Attorneys for Plaintiffs*
*\*Pro hac vice application to be filed*